[Cite as *State v. Jones*, 2013-Ohio-2375.]

| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
|---|---|---|
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF LORAIN | ) | |

| STATE OF OHIO | C.A. No. 12CA010270 |
|---|---|
| Appellant | |
| v. | APPEAL FROM JUDGMENT ENTERED IN THE |
| BRETT JONES | COURT OF COMMON PLEAS COUNTY OF LORAIN, OHIO |
| Appellee | CASE No. 12CR084582 |

DECISION AND JOURNAL ENTRY

Dated: June 10, 2013

WHITMORE, Judge.

{¶1} Appellant, the State of Ohio, appeals from a judgment of the Lorain County Court of Common Pleas granting Appellee, Brett Jones', motion to suppress. This Court reverses.

I

{¶2} On a clear February afternoon, Ohio State Highway Patrol Trooper Daniel Morrison conducted a traffic stop of a Chevy Impala driven by Jones on the Ohio Turnpike. Trooper Morrison testified that he witnessed Jones travelling 75 m.p.h. in a 70 m.p.h. zone. Trooper Morrison further testified that he approached the passenger's side window, which was already down, and "immediately [] began smelling an odor of raw marijuana coming from the vehicle."

{¶3} Trooper Morrison asked Jones to step out of the car so that he could conduct a search. While conducting a pat down of Jones, Sergeant Laughlin arrived. According to Trooper Morrison, Sergeant Laughlin, before having any contact with Trooper Morrison,

commented that the car smelled of marijuana. Jones was placed in Trooper Morrison's cruiser, while the officers searched the passenger compartment. Trooper Morrison testified that they found marijuana residue ("shake") on the passenger's seat and floor. Trooper Morrison then proceeded to search the trunk of the car. In the trunk, Trooper Morrison found a backpack containing Jones' personal items, 106 grams of marijuana, 60 bindles of heroin, and a brown brick of heroin (506 grams).

{¶4} Jones was indicted on (1) trafficking in violation of R.C. 2925.03(A)(2), a felony of the first degree; (2) possession in violation of R.C. 2925.11(A), a felony of the first degree; (3) possession in violation of R.C. 2925.11(A), a misdemeanor of the fourth degree; and (4) drug paraphernalia in violation of R.C. 2925.14(C)(1), a misdemeanor of the fourth degree.

{¶5} Jones filed a motion to suppress arguing that the officers did not have probable cause to search the trunk of the car. After a hearing, the court agreed and granted his motion. The State now appeals and raises one assignment of error for our review.

II

Assignment of Error

THE TRIAL COURT ERRED IN GRANTING MR. JONES' MOTION TO SUPPRESS AS THE EVIDENCE RECOVERED FROM HIS VEHICLE WAS OBTAINED THROUGH A LEGAL SEARCH.

{¶6} In its sole assignment of error, the State argues the court erred in granting Jones' motion to suppress because the officers had probable cause to search the trunk for marijuana. We agree.

> Appellate review of a motion to suppress presents a mixed question of law and fact. When considering a motion to suppress, the trial court assumes the role of trier of fact and is therefore in the best position to resolve factual questions and evaluate the credibility of witnesses. *State v. Mills*, 62 Ohio St.3d 357, 366 (1992). Consequently, an appellate court must accept the trial court's findings of fact if they are supported by competent, credible evidence. *State v. Fanning*, 1

Ohio St.3d 19 (1982). Accepting these facts as true, the appellate court must then independently determine, without deference to the conclusion of the trial court, whether the facts satisfy the applicable legal standard. *State v. McNamara*, 124 Ohio App.3d 706 (4th Dist.1997).

*State v. Burnside*, 100 Ohio St.3d 152, 2003-Ohio-5372, ¶ 8. This Court, therefore, will first review the trial court's findings of fact to ensure those findings are supported by competent and credible evidence. This Court will then review the trial court's legal conclusions de novo.

{¶7} There has been no challenge to the court's finding that the initial traffic stop was constitutionally valid. Accordingly, we limit our review to the search conducted by the officers.

{¶8} The Fourth Amendment of the United States Constitution, applied to the states through the Fourteenth Amendment, protects persons against unreasonable searches and seizures. "For a search or seizure to be reasonable under the Fourth Amendment, it must be based upon probable cause and executed pursuant to a warrant." *State v. Moore*, 90 Ohio St.3d 47, 49 (2000). Searches conducted without a warrant are presumptively unreasonable, unless an exception to the warrant requirement applies. *See Payton v. New York*, 445 U.S. 573, 586 (1980).

{¶9} The automobile exception is one exception to the warrant requirement. *United States v. Ross*, 456 U.S. 798, 807 (1982). "Although the Fourth Amendment recognizes that individuals have privacy interests in their vehicles, the inherent characteristics of vehicles 'justif[y] a lesser degree of protection of [the privacy] interests [in them].'" *State v. Friedman*, 194 Ohio App.3d 677, 2011-Ohio-2989, ¶ 7 (9th Dist.), quoting *California v. Carney*, 471 U.S. 386, 390 (1985). Provided there is "probable cause to search an entire vehicle, [officers] may conduct a warrantless search of every part of the vehicle and its contents, including all movable containers and packages, that may logically conceal the object of the search." *State v. Welch*, 18 Ohio St.3d 88 (1985), syllabus. Probable cause is determined by the totality of the

circumstances. *State v. Steen*, 9th Dist. No. 21871, 2004-Ohio-2369, ¶ 5, citing *Illinois v. Gates*, 462 U.S. 213, 238 (1983).

{¶10} Here, Trooper Morrison testified that he smelled a strong odor of raw marijuana as he first approached the passenger's window and that he has been trained to recognize the scent of the drug. A warrantless search of the passenger compartment is permissible if an odor of marijuana is detected by a qualified person. *Moore*, 90 Ohio St.3d at 50 ("[I]f the smell of marijuana, as detected by a person who is qualified to recognize the odor, is the sole circumstance, this is sufficient to establish probable cause. There need be no additional factors to corroborate the suspicion of the presence of marijuana."). Jones does not challenge the search of the passenger compartment. Instead, Jones focuses his challenge on the scope of the search conducted. Specifically, Jones argues that the officers exceeded the scope of the probable cause when they searched the trunk of his car.

{¶11} In reaching its factual findings, the trial court stated that it "[r]esolv[ed] the facts adduced at [the suppression] hearing most favorably to the state of Ohio." However, at a suppression hearing the trial judge is not simply to resolve facts in favor of the State; instead, the judge is to evaluate the evidence and the credibility of the witnesses. *See Mills*, 62 Ohio St.3d at 366. Nevertheless, we conclude the court's findings that "Trooper Morrison detected the odor of raw marihuana emanating from the passenger compartment of [Jones'] vehicle * * * [and] located raw marihuana scattered on the floor and on the front passenger seat" to be supported by competent, credible evidence.

{¶12} Trooper Morrison found contraband in his search of the passenger compartment. Specifically, "[t]here was marijuana shake on the passenger's floorboard and seat." After discovering the marijuana shake in the passenger compartment, Trooper Morrison conducted a

search of the trunk. In its judgment entry, the trial court correctly acknowledged that, under these circumstances, a search of the trunk would have been permissible under the Fourth Amendment, citing *United States v. Ross*, 456 U.S. 798 (1982). However, the court also held that the search of the trunk was unlawful under the Ohio Constitution because the state constitution provides greater protection than that of the Fourth Amendment.

{¶13} The language of Section 14, Article I of the Ohio Constitution is virtually identical to the Fourth Amendment. "[W]here the provisions are similar and no persuasive reason for a differing interpretation is presented, [the Supreme Court of Ohio] has determined that protections afforded by Ohio's Constitution are coextensive with those provided by the United States Constitution." *State v. Robinette*, 80 Ohio St.3d 234, 238 (1997). In *Robinette*, the Court addressed the issue of whether the Ohio Constitution provided an additional requirement for officers "to inform an individual, stopped for a traffic violation, that he or she is free to go before the officer may attempt to engage in consensual interrogation." *Id*. at 245. The Ohio Supreme Court found no persuasive reason to read greater protections into Section 14, Article I of the Ohio Constitution than those that were already provided by the Fourth Amendment. *Id*. at 245.

{¶14} Subsequent to *Robinette*, the Ohio Supreme Court has recognized only one area where the Ohio Constitution provides greater protection than the Fourth Amendment and that involves warrantless arrests for minor misdemeanors. *See State v. Brown*, 99 Ohio St.3d 323, 2003-Ohio-3931. In reaching its conclusion, the *Brown* Court relied on its analysis in *State v. Jones*, 88 Ohio St.3d 430 (2000), where it weighed "the degree to which the governmental action intrudes upon a person's liberty and privacy [against] * * * the degree to which the intrusion is necessary for the promotion of legitimate governmental interests." *Jones* at 438. Other than this

narrow exception, the Ohio Supreme Court has not recognized any other areas in which Section 14, Article I, of the Ohio Constitution provides greater protection than the Fourth Amendment.

{¶15} The Ohio Supreme Court has found that the Ohio Constitution provides greater protection than the Fifth Amendment. In granting Jones' motion to suppress, the trial court relied on *State v. Farris*, 109 Ohio St.3d 519, 2006-Ohio-3255. We conclude that the trial court misread *Farris* and, moreover, *Farris* is inapplicable in this case because it applied Section 10, Article I of the Ohio Constitution and the Fifth Amendment, while this case involves Section 14, Article I of the Ohio Constitution and the Fourth Amendment. *Robinette* and *Farris* applied two different provisions of the Ohio and United States Constitutions, and application of *Farris* to this case is inappropriate.

{¶16} The Court in *Farris* held that Section 10, Article I of the Ohio Constitution provides greater protection than the Fifth Amendment to the United States Constitution. *Farris* at ¶ 49. The issue in *Farris* was whether "evidence obtained as the direct result of statements made in custody without the benefit of a *Miranda* warning should be excluded." *Id*. The Court recognized that the Fifth Amendment did not require the exclusion of such evidence, but held that the Ohio Constitution must provide greater protection. Here, neither the Fifth Amendment, nor Section 10, Article I of the Ohio Constitution is at issue. Jones is not attempting to exclude evidence based on statements he made.

{¶17} We further note that *Farris* is factually distinguishable from the case at hand. In *Farris*, the Court was faced with the question of whether an officer may search the trunk of a car without finding *any* physical contraband in the passenger compartment. Here, it is undisputed that Trooper Morrison found contraband (i.e., marijuana shake) on the passenger's seat and floor. Therefore, we conclude that we do not need to reach the issue of whether the smell of raw

marijuana in the passenger compartment of a vehicle, standing alone, is sufficient to establish probable cause to search the trunk of the vehicle. Trooper Morrison observed more than just the smell of marijuana.

{¶18} Factually, this case is more analogous *State v. Carmichael*, 9th Dist. No. 11CA010086, 2012-Ohio-5923. In *Carmichael*, the Trooper observed "marijuana seeds, buds, and stems on the lap of the front seat passenger." *Id*. at ¶ 2. In addition, the driver turned over marijuana from the center console on request, and the Trooper discovered marijuana in the back seat during his search of the passenger compartment. *Id*. at ¶ 2-3. While we acknowledge the concern raised by the dissent, we disagree that the amount of contraband found determines whether there is probable cause to search the remaining portions of the vehicle. The test is whether in light of the totality of the circumstances, "there is a fair probability that contraband * * * will be found in the trunk." (Internal citations, alterations, and quotations omitted.) *Carmichael* at ¶ 9.

{¶19} Neither the trial court nor Jones cites any case to support their position that Section 14, Article I of the Ohio Constitution prohibits a warrantless search of an automobile trunk once law enforcement finds contraband in the passenger compartment. Nor are we persuaded to find additional protections in the Ohio Constitution after weighing "the degree to which the governmental action intrudes upon a person's liberty and privacy [against] * * * the degree to which the intrusion is necessary for the promotion of legitimate governmental interests." *Jones*, 88 Ohio St.3d at 438. The protections provided by the Fourth Amendment and Section 14, Article I of the Ohio Constitution, as they apply in this case, are coextensive.

{¶20} We conclude that the Ohio Constitution, like the United States Constitution, does not prohibit warrantless searches of an automobile trunk after law enforcement has found

contraband in the passenger compartment. The trial court correctly concluded that this search would be proper under the United States Constitution, but erroneously decided that *Farris* required a different result under the Ohio Constitution. The trial court erred by granting Jones' motion to suppress, and the State's sole assignment of error is sustained.

III

{¶21} The State's sole assignment of error is sustained. The judgment of the Lorain County Court of Common Pleas is reversed, and this cause is remanded for further proceedings consistent with this opinion.

Judgment reversed,
and cause remanded.

————

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Lorain, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellee.

_____
BETH WHITMORE
FOR THE COURT

CARR, J.
CONCURS.

BELFANCE, P. J.
DISSENTING.

{¶22} I respectfully dissent. The trooper's detection of the odor of raw marijuana coming from the passenger compartment gave him probable cause to search the passenger compartment of the vehicle. *State v. Moore*, 90 Ohio St.3d 47, 49-50 (2000); *State v. Farris*, 109 Ohio St.3d 519, 2006-Ohio-3255, ¶ 50-52. However, once in the car, the trooper discovered "shake[,]" which the trial court determined was what the officer had smelled. In addition, the trial court determined that there was no indication the trooper had detected any odor emanating from the trunk. Notably, the State has not challenged the trial court's determinations on these points. Thus, in keeping with *Farris*, the trial court determined that the trooper had probable cause to search the passenger compartment of the vehicle but not the trunk. At issue in this case is whether the trooper's discovery of a miniscule amount of marijuana on the passenger seat and floor provided probable cause for him to search a separate and contained part of the vehicle from which no smell was emanating.

{¶23} The Fourth Amendment to the U.S. Constitution and Article I, Section 14 of the Ohio Constitution both protect individuals from unreasonable searches. With respect to the Fourth Amendment, the United States Supreme Court has repeatedly stated that "searches

conducted outside the judicial process, without prior approval by judge or magistrate, are per se unreasonable under the Fourth Amendment-subject only to a few specifically established and well-delineated exceptions." (Internal quotations and citations omitted.) (Emphasis omitted.) *California v. Acevedo*, 500 U.S. 565, 580 (1991).[1] One such exception is the "automobile exception," which was first enunciated in *Carroll v. United States*, 267 U.S. 132 (1925). In that case, which was decided during the Prohibition era, police engaged in a warrantless seizure and search of a vehicle that was suspected to contain contraband alcohol. *See id.* at 160-162. In upholding the warrantless search, the United States Supreme Court repeatedly emphasized that the Fourth Amendment protects citizens from unreasonable searches. *Id*. at 147. However, it determined that the seizure and search of the vehicle was reasonable given that "the vehicle can be quickly moved out of the locality or jurisdiction in which the warrant must be sought." *Id*. at 153. Essentially, the Court held that the vehicle's mobility creates an exigent circumstance excepting it from the warrant requirement.

{¶24} However, it is important to place *Carroll* in its time. While courts have consistently followed *Carroll* without giving its rationale much thought, *Carroll* was decided prior to any police department in the country putting radios in police cars. Lewis Coe, *Wireless Radio: A Brief History*, 128 (1996) (Police cars were not regularly equipped with radio receivers until the late 1920s, and two-way radios did not become common until the mid-1930s.). In a time before police cars were even equipped with radios, it would have been impracticable, if not impossible, for officers to obtain a warrant or even speak with a judge or magistrate before a vehicle eluded them. Even if there were two police cars, meaning one could follow the

---

[1] However, as Justice Scalia noted in his concurring opinion, the United State Supreme Court has continually expanded its list of exceptions, meaning "the 'warrant requirement' had become so riddled with exceptions that it was basically unrecognizable." *Acevedo* at 582 (Scalia, J., concurring in the judgment); *see also id.* (listing 13 exceptions to the warrant requirement).

suspected vehicle while the officers in the other car went to secure a warrant, there would have been no way for the police to find the suspected vehicle again given that they could not communicate with the car that remained behind to follow the suspects. Essentially, to obtain a warrant, the officers would have had to give up following the vehicle and hope to find it again later.

{¶25} Whether an exigency exists that justifies acting without a warrant depends on the totality of the circumstances. *Missouri v. McNeely*, — U.S. —, 133 S.Ct. 1552, 1559 (2013). Because of the technological limitations listed above, it is easy to see why the *Carroll* Court would treat an automobile as essentially being a per se exigent circumstance. However, "technological developments that enable police officers to secure warrants more quickly, and do so without undermining the neutral magistrate judge's essential role as a check on police discretion, are relevant to an assessment of exigency[,]" and there have been many technological developments in the 88 years since *Carroll* was decided. *McNeely* at 1562-1563. Radios are now an integral part of every police car as well as the advent of other forms of communication, meaning the concerns existing at the time *Carroll* was decided have been dramatically reduced if not eliminated entirely. In fact, we are fast approaching a time where officers could use a technology similar to Facetime or Skype to swear out an affidavit remotely before a magistrate while the magistrate signs a warrant and electronically returns it to the officer. Unfortunately, the existing jurisprudence fails to account for these dramatic changes in technology, which call into question the reasonableness of the exigency rationale in the context of a warrantless search of an automobile.[2]

---

[2] However, some state courts have held that their state constitutions require a showing of exigency beyond the mobility of the vehicle to justify a warrantless search. *See, e.g., Pennsylvania v. Perry*, 568 Pa. 499, 504 (2002) ("[U]nder Pennsylvania law, for a warrantless

**{¶26}** In addition, when *Carroll* was decided, there was no basis upon which to stop or detain a person absent probable cause, a fact that formed the basis of the Court's reasoning in that case. *See Carroll*, 267 U.S. at 155-157. However, subsequent to the landmark decision of *Terry v. Ohio*, 392 U.S. 1 (1968), officers are now able to stop and detain citizens without probable cause but rather upon reasonable, articulable suspicion of criminal activity. *Id*. at 21. *See also State v. Widner*, 69 Ohio St.2d 267, 269 (1982) (applying *Terry* to a vehicle stop). *See also State v. Mays*, 119 Ohio St.3d 406, 2008-Ohio-4539, ¶ 7, citing *Delaware v. Prouse*, 440 U.S. 648, 663 (1979) ("[A] traffic stop is constitutionally valid if an officer has a reasonable and articulable suspicion that a motorist has committed, is committing, or is about to commit a crime."). Thus, officers now have the ability, unavailable when *Carroll* was decided, to seize citizens for less than probable cause.[3] While an officer who stops an individual upon reasonable, articulable suspicion must allow the individual to proceed about his or business once the officer's suspicion has been satisfied, the officer may also continue the detention should new facts be discovered which may ultimately rise to the level of probable cause to continue the seizure as

search of a motor vehicle to be valid, there must be a showing of both probable cause and exigent circumstances.") (Emphasis omitted.); *Nevada v. Harnisch*, 114 Nev. 225, 228-229 (1998) ("[T]he Nevada Constitution requires both probable cause and exigent circumstances in order to justify a warrantless search of a parked, immobile, unoccupied vehicle."); *New Mexico v. Gomez*, 122 N.M. 777, 788 (1997).

[3] It is important to note that not every automobile stop will entail a search but every stop does entail a seizure. Although it is apparent that these are not equally invasive, the United States Supreme Court continued to treat seizures and searches as equally invasive despite probable cause generally being required to conduct a search while seizures may be effected on reasonable, articulable suspicion in the wake of *Terry*. *See Chambers v. Maroney*, 399 U.S. 42, 52 (1970) ("For constitutional purposes, we see no difference between on the one hand seizing and holding a car before presenting the probable cause issue to a magistrate and on the other hand carrying out an immediate search without a warrant."). While a seizure is invasive, searches are necessarily more invasive given that a search involves delving into one's personal and private belongings. *See Chambers* at 63 (Harland, J., concurring in part and dissenting in part) ("[I]n the circumstances in which this problem [(a seizure or a search)] is likely to occur, the lesser intrusion will almost always be the simple seizure of the car for the period-perhaps a day- necessary to enable the officers to obtain a search warrant.").

well as to conduct a search. *Berkemer v. McCarty*, 468 U.S. 420, 439-440 (1984) ("[T]he stop and inquiry must be reasonably related in scope to the justification for their initiation. Typically, this means that the officer may ask the detainee a moderate number of questions to determine his identity and to try to obtain information confirming or dispelling the officer's suspicions. But the detainee is not obliged to respond. And, unless the detainee's answers provide the officer with probable cause to arrest him, he must then be released.") (Internal quotations and citations omitted.). In addition, *Carroll* was decided at a time when the United States Supreme Court had not yet determined that a sniff around a vehicle is not a search within the meaning of the Fourth Amendment. *Illinois v. Caballes*, 543 U.S. 405, 408-410 (2005). Thus, in a case of a traffic stop where an officer suspects that the car contains illegal narcotics, the stop may be instantly coordinated with a drug dog that can immediately sniff the vehicle. Moreover, if there is reasonable articulable suspicion, the initial stop may be extended to allow for the arrival of a drug-sniffing dog. *State v. Batchili*, 113 Ohio St.3d 403, 2007-Ohio-2204, ¶ 15. Thus, the advent of technology, drug-sniffing dogs, and the ability to detain a vehicle on less than probable cause render the exigency rationale expressed in *Carroll* less compelling than it was in 1925.[4]

{¶27} Following *Carroll*, the United States Supreme Court developed a second justification for the automobile exception: the reduced expectation of privacy rationale. *See, e.g., Cardwell v. Lewis*, 417 U.S. 583, 590 (1974) ("One has a lesser expectation of privacy in a motor

---

[4] The touchstone of the Fourth Amendment is reasonableness measured in objective terms by an examination of the totality of the circumstances. In the context of evaluating a warrantless search of an individual stopped in his vehicle, the *McNeely* court emphasized the application of a "finely tuned" totality of the circumstances approach when evaluating the reasonableness of a warrantless search based upon alleged exigent circumstances. (Internal quotations and citation omitted.) *McNeely*, 133 S.Ct. at 1559. The Court found that the fact-specific nature of the reasonableness inquiry demands that courts evaluate each case of alleged exigency on its facts. *Id.* at 1563. Applying this approach in keeping with the technological advances outlined above calls into question whether the continued application of the automobile exception's per se exigency rule without consideration of the facts of the case is reasonable.

vehicle because its function is transportation and it seldom serves as one's residence or as the repository of personal effects. A car has little capacity for escaping public scrutiny. It travels public thoroughfares where its occupants and its contents are in plain view."). However, how items visible in a car are different from those visible in a home through its windows has never been explained, let alone those items which are concealed from view by being fully underneath a seat or stored in a trunk. Moreover, unlike the days of the Model T, today American citizens *do* actually live in their cars. Many spend countless hours in bottleneck traffic where they eat, drink, work, watch television and movies, and socialize whether in person or via mobile phones or iPads. It is not uncommon for a vehicle to be equipped with plugs for computers, compact fax machines and refrigerators. Nor can it be said that citizens do not store their personal belongings and effects in areas of their automobiles that are not open to public view. *See Katz v. United States*, 389 U.S. 347, 351 (1967) ("What a person knowingly exposes to the public, even in his own home or office, is not a subject of Fourth Amendment protection. But what he seeks to preserve as private, even in an area accessible to the public, may be constitutionally protected.") (Internal citations omitted.). Although the United States Supreme Court viewed the automobile as an external location subject to lesser protection, that premise is questionable given the very different role of the automobile in today's society. Moreover, although it may be that a citizen can be said to have a diminished expectation of privacy in an automobile, there is nonetheless an expectation of privacy. *See id.*

{¶28} Turning to *Farris*, an officer smelled an odor of burnt marijuana during a traffic stop and searched the entire vehicle. *Farris*, 109 Ohio St.3d 519, 2006-Ohio-3255, at ¶ 1, 5. The Ohio Supreme Court found that the search of the passenger compartment was permissible but not the trunk, holding that "[a] trunk and a passenger compartment of an automobile are

subject to different standards of probable cause to conduct searches." *Id*. at ¶ 51. Although, the Ohio Supreme Court did not provide further analysis as to why the passenger compartment and trunk are subject to different standards of probable cause, it is possible that the court was alluding to the privacy rationale underpinning the "automobile exception" to the warrant requirement when evaluating the reasonableness of the search, and in doing so, recognized the distinction between a citizen's expectations of privacy in the passenger compartment versus the trunk.[5] In other words, while an open and visible passenger compartment may be reasonably subject to a reduced expectation of privacy, the same is not true of a closed trunk which is private and not visible for all to see. This is only logical since people use their cars to transport and store items of value of personal importance and, oftentimes, will keep those items in the trunk for greater safety (e.g. to hide them from potential thieves walking past parked cars and looking for valuables lying on the seat). However, the "automobile exception" jurisprudence of the United States Supreme Court makes no distinction between a passenger compartment and a trunk. *See generally United States v. Ross*, 456 U.S. 798, 825 (1982). Thus, to the extent the Ohio Supreme Court intended in *Farris* to recognize a citizen's expectation of privacy in the trunk of a vehicle for purposes of evaluating probable cause to conduct a warrantless search, it intended to do so under Article I, Section 14 of the Ohio Constitution.

{¶29} While the Ohio Supreme Court has generally interpreted Article I, Section 14 of the Ohio Constitution to be coextensive with the Fourth Amendment, it has acknowledged that deviation may be appropriate in certain cases. *See State v. Brown*, 99 Ohio St.3d 323, 2003-Ohio-3931, ¶ 22, quoting *State v. Robinette*, 80 Ohio St.3d 234, 239 (1997) ("'[W]e should

---

[5] In alluding to different standards of probable cause, it would appear that the *Farris* Court was recognizing the relationship of the privacy interest at stake inherent to the evaluation of the overall reasonableness of a warrantless search, to the quantum of evidence reasonably necessary to establish probable cause.

harmonize our interpretation of Section 14, Article I of the Ohio Constitution with the Fourth Amendment, unless there are persuasive reasons to find otherwise.'").[6] The automobile exception may be such an instance. Notably, other states have similarly deviated from the federal automobile exception cases based on their state constitutions. *See, e.g., Oregon v. Kurokawa-Lasciak*, 351 Or. 179, 190 (2011) ("[A]ny search of an automobile that was parked, immobile and unoccupied at the time the police first encountered it in connection with the investigation of a crime must be authorized by a warrant issued by a magistrate or, alternatively, the prosecution must demonstrate that exigent circumstances other than the potential mobility of the automobile exist.") (Internal quotations and citation omitted.) (Emphasis omitted.); *Perry*, 568 Pa. at 504; *Harnisch*, 114 Nev. at 228-229; *Gomez*, 122 N.M. at 788; *Connecticut v. Miller*, 227 Conn. 363, 384-385 (1993) (holding that once a vehicle has been impounded, a warrantless search is no longer permitted under the automobile exception). *See also Vermont v. Savva*, 159 Vt. 75, 88 (1991) (concluding that mobility did not constitute a per se exigency and that it would diverge from the federal automobile exception and would "recognize a separate and higher expectation of privacy for containers used to transport personal possessions than for objects exposed to plain view within an automobile's interior").

{¶30} The majority suggests that *Farris* is a case solely concerned with the Self-Incrimination Clause of Article I, Section 10 of the Ohio Constitution. *See Farris*, 109 Ohio St.3d 519, 2006-Ohio-3255, at ¶ 9. However, this is simply not the case. *See id.* (listing five issues before the Supreme Court for review including "whether the [other four] issues are irrelevant in this matter because an officer has probable cause to search an entire vehicle,

---

[6] Notably, in *Farris*, the Court already had deviated from the general rule that essentially identical provisions of the Ohio and United States Constitutions should be harmonized when it concluded that Article I, Section 10 provided greater protection than the Fifth Amendment. *See Farris*, 109 Ohio St.3d 519, 2006-Ohio-3255, at ¶ 45-50.

including its trunk, when he smells the odor of burnt marijuana coming from the vehicle"). Whether an officer has probable cause to search is obviously outside the scope of Article I, Section 10 of the Ohio Constitution, and, instead, falls firmly within the confines of Article I, Section 14. While the Supreme Court did analyze whether the defendant's statements were inadmissible under Article I, Section 10 of the Ohio Constitution, *see id.* at ¶ 45-49 (concluding that Article I, Section 10 of the Ohio Constitution provides greater protection than the Fifth Amendment), it then went on to determine whether the officer "had probable cause to believe that the car contained contraband due to his detection of the scent of marijuana and that the automobile exception to the warrant requirement permitted him to search the vehicle." *Id.* at ¶ 50. *See also id.* at ¶ 9.

{¶31} With this in mind, it is necessary to discuss this Court's representation of *Farris*'s holding in *State v. Carmichael*, 9th Dist. No. 11CA010086, 2012-Ohio-5923. While *Carmichael* quotes the statement in *Farris* that "[t]he automobile exception does not apply in this case[,]" it plucks that statement from its context and attempts to paint *Farris* as a search incident to arrest case. *See Carmichael* at ¶ 12, quoting *Farris*, 109 Ohio St.3d 519, 2006-Ohio-3255, at ¶ 52. However, what the *Farris* majority actually said was as follows:

> The odor of burnt marijuana in the passenger compartment of a vehicle does not, standing alone, establish probable cause for a warrantless search of the trunk of the vehicle. No other factors justifying a search beyond the passenger compartment were present in this case. The officer detected only a light odor of marijuana, and the troopers found no other contraband within the passenger compartment. The troopers thus lacked probable cause to search the trunk of Farris's vehicle. Therefore, the automobile exception does not apply in this case.

(Internal citation omitted.) *Farris* at ¶ 52. In other words, the evidence discovered as a result of the officer's warrantless search was not admissible under the automobile exception *because* the officer had lacked probable cause. In fact, at no time was it suggested that the evidence was

discovered as a result of a search incident to arrest; rather, the question was always whether the evidence was admissible under the automobile exception.[7] *See Farris* at ¶ 6-7. *See also State v. Farris*, 9th Dist. No. 03CA0022, 2004-Ohio-826, ¶ 17-19 (upholding the search solely under the automobile exception). Thus, to the extent that *Carmichael* treats *Farris* as a search incident to arrest, I believe that it is incorrect.

{¶32} In applying *Farris* to this case, and in keeping with the findings of the trial court, the question arises as to whether the trooper had probable cause to conduct a warrantless search of Mr. Jones' trunk when there was no evidence the trooper detected any smell emanating from the trunk and trace amounts of marijuana were found on the floor and passenger seat, which the trial court decided was the object of the smell. Under the circumstances of this case and recognizing the distinction between the probable cause to search a trunk versus the search of the passenger compartment pursuant to *Farris*, I would conclude that probable cause did not exist to search the trunk. Rather, I would conclude that the trooper had reasonable articulable suspicion to engage in further inquiry. Probable cause means "more than bare suspicion: [it] exists where 'the facts and circumstances within their (the officers') knowledge and of which they had reasonably trustworthy information (are) sufficient in themselves to warrant a man of reasonable caution in the belief that' an offense has been or is being committed." *Brinegar v. United States*, 338 U.S. 160, 175-176 (1949), quoting *Carroll*, 267 U.S. at 162. Once probable cause exists, an officer essentially has the ability to dismantle the vehicle, looking in the upholstery, in the doors,

---

[7] Admittedly, the *Farris* Court's citation to *State v. Murrell*, 94 Ohio St.3d 489 (2002), is confusing since *Murrell* was a search incident to arrest case. *See Farris* at ¶ 51. However, searches incident to arrest do not involve probable cause, meaning that the *Farris* Court could not have been analyzing the search as a search incident to arrest given its discussion of probable cause. *See Murrell* at 493 ("[T]he United States Supreme Court in *Belton* deliberately chose not to analyze the situation before it under the automobile exception to the warrant requirement, which is based on probable cause.") (Emphasis omitted.). *See generally New York v. Belton*, 453 U.S. 454 (1981); *Chimel v. California*, 395 U.S. 752 (1969).

and in the engines. *See, e.g., Carroll*, 267 U.S. at 132, 162 (concluding that officers had probable cause to tear upholstery to locate hidden liquor). *See also Ross*, 456 U.S. at 821 ("When a legitimate search is under way, and when its purpose and its limits have been precisely defined, nice distinctions between closets, drawers, and containers, in the case of a home, or between glove compartments, upholstered seats, trunks, and wrapped packages, in the case of a vehicle, must give way to the interest in the prompt and efficient completion of the task at hand."). The Fourth Amendment is supposed to protect citizens from unreasonable searches and seizures, and I cannot believe that an expansive search of a trunk based on a minute amount of marijuana found in the passenger compartment could be considered reasonable or supported by probable cause. *See Acevedo*, 500 U.S. at 569.

{¶33} The majority relies on *Carmichael* in concluding that it is. However, *Carmichael* involved significantly different facts, not least of which were that the front-seat passenger had "marijuana seeds, buds, and stems" on his lap. *Carmichael*, 2012-Ohio-5923, at ¶ 2. Moreover, when asked whether there was contraband in the vehicle, the driver handed the officer "a piece of folded cardboard containing marijuana from the center console." *See id*. at ¶ 10. The officer in *Carmichael* also testified that he found some marijuana where the defendant was sitting. *Id*. The officer in *Carmichael* had the driver produce contraband, saw contraband *on* a passenger, and found additional contraband where the third passenger was sitting. *Id*. This is significantly more evidence of criminal activity by the car's occupants than the "shake" on the passenger seat and floor.

{¶34} While I believe that the "shake" provided the trooper with reasonable, articulable suspicion, to further detain and question Mr. Jones, and perhaps bring a K-9 unit to the scene, in keeping with *Farris*, I do not believe that the miniscule traces of marijuana found on the

passenger seat and floor provided probable cause to conduct a warrantless search beyond the passenger compartment of the vehicle.  Accordingly, I dissent.

APPEARANCES:

DENNIS P. WILL, Prosecuting Attorney, and NATASHA RUIZ GUERRIERI, Assistant Prosecuting Attorney, for Appellant.

SAMIR HADEED, Attorney at Law, for Appellee.