The STATE of Ohio, Appellee,

v.

McDANIEL, Appellant.

[Cite as *State v. McDaniel* (1993), 91 Ohio App.3d 189.]

Court of Appeals of Ohio,
Cuyahoga County.

No. 65023.

Decided Oct. 18, 1993.

*Stephanie Tubbs Jones,* Cuyahoga County Prosecuting Attorney, and *Rebecca J. Greenberg,* Assistant Prosecuting Attorney, for appellee.

*Hyman Friedman,* Cuyahoga County Public Defender, and *Beverly J. Pyle,* Assistant Public Defender, for appellant.

---

*Per Curiam.*

Defendant-appellant Michael McDaniel appeals from the trial court's decision overruling his motion to suppress illegally seized evidence. For the reasons adduced below, we affirm.

The sole witness to appear at the suppression hearing was Detective Keith Thompson ("Det. Thompson") of the Cleveland Police Department's Strike Force. The appellant chose not to testify.

Det. Thompson testified that as a result of citizen and councilmanic complaints of heavy drug trafficking and drug usage, he was assigned to investigate a certain hallway in a building in the King–Kennedy projects.

While on duty at approximately 4:00 p.m., he observed the appellant in this particular hallway loitering in what he deemed to be suspicious activity. At this time, Det. Thompson was accompanied by two other detectives.

Det. Thompson engaged the appellant in a conversation. The appellant, in response to an inquiry, stated that he did not have drugs or weapons on or about his person. Thereafter, Det. Thompson asked the appellant if he could search him. The appellant, after being asked by Det. Thompson only once, consented to the search. The search of the appellant produced a glass crack pipe with residue which later tested positive for cocaine.

The appellant was charged with possession of cocaine in an amount less than the bulk (R.C. 2925.11[A]). The appellant entered a plea of no contest after his motion to suppress was overruled.

He now appeals and assigns one error for our review:

"The trial court erred in denying Mr. McDaniel's suppression motion as the evidence seized by the Cleveland Police Department was the fruit of an illegal search and seizure of Mr. McDaniel in violation of Article One, Section Fourteen of the Ohio Constitution and the Fourth and Fourteenth Amendments to the United States Constitution."

The appellant argues that the trial court should have granted his motion to suppress, as the crack pipe containing cocaine residue was procured as the result of an illegal search and seizure. Specifically, he contends that Thompson's initial contact with him violated the Fourth Amendment.

The Fourth Amendment to the United States Constitution protects an individual against unreasonable searches and *seizures*. As stated in *United States v. Mendenhall* (1980), 446 U.S. 544, 554–555, 100 S.Ct. 1870, 1877, 64 L.Ed.2d 497, 509, "[t]he purpose of the Fourth Amendment is not to eliminate all contact between the police and the citizenry, but 'to prevent arbitrary and oppressive interference by enforcement officials with the privacy and personal security of individuals.'" *Id.*, quoting *United States v. Martinez–Fuerte* (1976), 428 U.S. 543, 554, 96 S.Ct. 3074, 3081, 49 L.Ed.2d 1116, 1126.

In this case, the focus of our inquiry is not whether there was probable cause to stop and search the appellant but whether the officers' conduct constituted a seizure. See *State v. Johnson* (1986), 34 Ohio App.3d 94, 517 N.E.2d 262. We hold that, under the facts of this case, the police officers' conduct did not constitute a seizure.

It is well established that "a seizure does not occur simply because a police officer approaches an individual and asks a few questions. So long as a reasonable person would feel free 'to disregard the police and go about his business,' *California v. Hodari D.*, 499 U.S. 621, 625 [111 S.Ct. 1547, 1551, 113 L.Ed.2d 690, 697] (1991), the encounter is consensual and no reasonable suspicion is required. The encounter will not trigger Fourth Amendment scrutiny unless it loses its consensual nature." *Florida v. Bostick* (1991), 501 U.S. ——, ——, 111

S.Ct. 2382, 2386, 115 L.Ed.2d 389, 399; see, also, *Florida v. Royer* (1983), 460 U.S. 491, 103 S.Ct. 1319, 75 L.Ed.2d 229 (Fourth Amendment not violated when law enforcement officers merely approach an individual and ask him if he is willing to answer a few questions). "Obviously, not all personal intercourse between policemen and citizens involves 'seizures' of persons. Only when the officer, by means of physical force or show of authority, has in some way restrained the liberty of a citizen may we conclude that a seizure has occurred." *Terry v. Ohio* (1968), 392 U.S. 1, 19, 88 S.Ct. 1868, 1879, 20 L.Ed.2d 889, 904, fn. 16.

The test for determining if a person has been "seized" within the meaning of the Fourth Amendment is whether a reasonable person would have believed he was not free to leave, in view of all the surrounding circumstances. *United States v. Mendenhall, supra.* The reasonable-person test presupposes an innocent person. *Florida v. Bostick, supra,* 501 U.S. at ——, 111 S.Ct. at 2388, 115 L.Ed.2d at 400. Hence, the reasonable-person standard as applied to the scope of the Fourth Amendment does not vary with the state of mind of the person who is approached by law enforcement officers. *Id.,* citing *Michigan v. Chesternut* (1988), 486 U.S. 567, 574, 108 S.Ct. 1975, 1980, 100 L.Ed.2d 565, 572. For instance, it is indeed possible for an individual to freely consent to a search of his person when he knows he is in possession of contraband. *Id.* The focus is not on the subjective state of mind of the person being approached, but rather is on the police officer's conduct. Unless a police officer demonstrably curtails an individual's liberty and freedom of movement, a seizure has not taken place. *Id.*

On the facts of this case, no "seizure" occurred. We find no reason that is supportable by the evidence to stray from these tenets of law as established by the United States Supreme Court. Thompson approached the appellant and asked him a few questions. The appellant was "free to decline the officers' requests or otherwise terminate the encounter." *Florida v. Bostick, supra,* 501 U.S. at ——, 111 S.Ct. at 2387, 115 L.Ed.2d at 399. Nothing in the record indicates that the officers curtailed the appellant's liberty and freedom of movement.

Accordingly, no constitutional right was infringed.

Ergo, the appellant's assignment of error is overruled.

*Judgment affirmed.*

PATTON, P.J., and NUGENT, J., concur.

BLACKMON, J., dissents.

BLACKMON, Judge, dissenting.

I respectfully dissent from the position of the *per curiam* opinion that this case does not require Fourth Amendment scrutiny. The failure to scrutinize these facts under the Fourth Amendment ignores the police officers' show of authority toward McDaniel. Moreover, it tacitly adopts the view that in the area of limited self-protective searches for weapons a police officer may reach beyond and hunt for a crime without probable cause. In Justice Brennan's concurrence in *Florida v. Royer* (1983), 460 U.S. 491, at 510, 103 S.Ct. 1319, at 1330, 75 L.Ed.2d 229, at 244, he warned against this manifest extension of *Terry v. Ohio* (1968), 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889. He went on further to say, "Although I recognize that the traffic in illicit drugs is a matter of pressing national concern, that cannot excuse this court from exercising its unflagging duty to strike down official activity that exceeds the confines of the Constitution." *Id.*, 460 U.S. at 512, 103 S.Ct. at 1331, 75 L.Ed.2d at 246.

The confines of the Fourth Amendment are exceeded "whenever a police officer accosts an individual and restrains his freedom to walk away." *Terry*, 392 U.S. at 16, 88 S.Ct. at 1877, 20 L.Ed.2d at 903. When an individual is not free to leave he is seized under the Fourth Amendment and the state is required to establish whether the seizure is reasonable. A reasonable seizure under the Fourth Amendment means that the police officer has specific reasonable inferences that a criminal enterprise is underway. These inferences may be drawn from the officer's experience. *Id.* at 27, 88 S.Ct. at 1883, 20 L.Ed.2d at 908. The officer's ability to articulate his suspicion may not be based on his inchoate and unparticularized suspicions or hunches or guesses, regardless of the correctness of the hunches or guesses. *Id.*

It is with these guidelines in mind that I have concluded that McDaniel was seized and that the seizure was unreasonable. I do so in the face of the conclusions of the *per curiam* opinion that the encounter was consensual and innocent, that McDaniel was free to leave at any time, and that he was free to decline the officer's request to search his person.

In 1980, the United States Supreme Court concluded that a person has been seized within the meaning of the Fourth Amendment when in view of all the circumstances surrounding the incident, a reasonable person would have believed that he or she was not free to leave. *United States v. Mendenhall* (1980), 446 U.S. 544, 100 S.Ct. 1870, 64 L.Ed.2d 497. In *Mendenhall* the Supreme Court held that a seizure might occur although a person did not attempt to leave, and it presented the following examples: the threatening presence of several officers, the display of a weapon by an officer, some physical touching of the person, or the use of language or tone of voice indicating that compliance with the officer's request might be compelled.

In this case the circumstances surrounding McDaniel's seizure occurred in the hallway of an apartment building in the city of Cleveland, when three plain-clothes, armed policemen showed their authority by encircling McDaniel, who they guessed was a drug user or dealer. They entered the seven-feet-wide hallway on routine drug patrol responding to citizens' past complaints that drug activity had taken place in that area. The complaints were not generated on that particular day nor was McDaniel a suspect identified by the complaints. When the officers encountered McDaniel, he was the sole person in the hallway and was not engaged in any activity other than standing, an innocent activity.

According to the record, two of the officers positioned themselves behind McDaniel and the third officer positioned himself in front of McDaniel. This officer testified at the hearing. It was this officer who engaged McDaniel in a conversation. During the conversation this officer identified himself and the others as police officers and asked McDaniel if he had drugs or weapons on his person; to this inquiry McDaniel responded in the negative. The officer was unimpressed with McDaniel's negative response and, not believing McDaniel, asked if he could search McDaniel. To this inquiry McDaniel consented.

It is because of these facts that I confront the question whether a reasonable person would have felt free to leave, regardless of whether he or she exercised the right to leave. The free-to-leave standard is applicable in this case because the restriction on McDaniel's movement was generated solely by the police and not by an independent factor, such as a moving bus. *Florida v. Bostick* (1991), 501 U.S. ——, 111 S.Ct. 2382, 115 L.Ed.2d 389. Consequently, in response to this issue, it is my belief that a reasonable person in a hallway in McDaniel's position would not have felt free to leave.

A reasonable person in a hallway may feel more threatened than one in an airport terminal or on the street. In an airport terminal a person need not respond to the police and may be able to maneuver around the officers and otherwise terminate the encounter; and if force is used the public is, in most cases, there to view the encounter. Additionally, in the airport cases the officers are allegedly responding to a drug courier profile as opposed to the profile of a male standing. Standing, for the most part, is still an innocent activity and not a behavior profile identifying illegal activity.

The *per curiam* opinion cites *Florida v. Bostick* and opines that McDaniel could have refused to give consent and could have terminated the encounter. It is this rationale of the *per curiam* opinion that muddies the legal waters of this case. Here, the true test to be applied is whether a reasonable person would have felt free to leave, not whether a reasonable person would have declined the request to search. This distinction between the two tests is important because *Florida v. Bostick* is limited to those situations where the movement of an

individual is restricted by means other than the police, such as a moving bus, which was the case in *Bostick.*

The *Bostick* theory is limited to those areas where the restriction on the suspect's movement is beyond the control of the police and not initiated by the police and where the suspect is informed that he or she may refuse the consent to search. To fail to limit *Bostick* in this way makes every encounter with the police as a matter of law innocent and consent searches not subject to meaningful Fourth Amendment scrutiny. Therefore, it is my belief that McDaniel's movement was restricted by the officer's threatening presence and that the consent search given by McDaniel was tainted fruit.

A consent search is tainted fruit when the seizure is unreasonable. *Royer,* 460 U.S. at 508, 103 S.Ct. at 1329, 75 L.Ed.2d at 246. In this case, the seizure was unreasonable because of the officers' overt bias that anyone standing in that hallway was subject to the inarticulable hunch of the officer that the person was a drug user and/or abuser. The key is not whether the results prove the hunch, but whether the process is reasonable.

The officers concluded that the hallway was a place where drugs were sold or abused. McDaniel was in the hallway; therefore, he must be an abuser or user. This is a guess and it is a problematic guess because it discounts the innocent people who traverse the hallway, it makes them subject to inarticulable hunches, it is based on stale information, and it does not require the police to ascertain the validity of the complaints by observing the area to determine if drug activity was occurring in the hallway.

The officers had not observed McDaniel committing any criminal act nor were they responding to a present complaint of a suspicious male in the hallway area. The officers acknowledged that their presence in that building on that day was routine patrol in response to past citizen complaints of drug activity but no current citizen complaints. There was no reasonable articulable fact presented by the officers as to why McDaniel was approached other than he was standing in an area that was believed to be a place where drug activity was alleged to have occurred.

The defense, of course, failed to put forth any evidence to rebut the officers' statements regarding citizens' complaints of drug activity in that particular building and in that particular hallway. I point this out primarily for clarity. Clearly, the convenience of the citizen complaint of drug activity is powerful and irrefutable. I am not suggesting it should be any other way. Nevertheless, when the citizen complaints are past versus current, an inquiry beyond the officer's voice should be encouraged.

Since *Terry,* state and federal courts have struggled with the inarticulable hunches of police officers and the innate bias that permeates the core of these hunches. The burden for most courts is that these hunches often prove correct and the accused citizen is no longer viewed through the innocent lens but through the criminal lens. It is in the face of this burdensome struggle that I am reminded that the effectiveness of the technique is not proof of its constitutionality. Moreover, I am reminded of the innate bias that runs through the core of the officers' hunches: the bias that anyone standing in that hallway was subject to be viewed as a drug dealer or a drug abuser, which translates into a belief that anyone in that building could have been stopped and searched. It is for this reason that I would reverse the trial court's denial of the motion to suppress.