JOURNAL ENTRY AND OPINION
Defendant-appellant Ebenezer Scott ("defendant") appeals the decision of the trial court denying his motion to suppress the evidence resulting from a drug stop and subsequent arrest.
On March 14, 1997, defendant was indicted in a single count indictment charging him with possession of crack cocaine in an amount greater than five grams but not exceeding ten grams in violation of R.C. 2925.11. Defendant filed a motion to suppress arguing his investigatory stop was illegal. A hearing was held regarding the motion to suppress.
At the hearing, plaintiff-appellee State of Ohio ("state") called Cuyahoga Metropolitan Housing Authority ("CMHA") Patrolman Ramsey as its first witness. Ramsey stated he was patrolling CMHA property at 4:20 in the afternoon on March 14, 1997, when he became involved in the arrest of defendant. Ramsey began by saying signs are posted throughout CMHA property indicating loitering is prohibited. Ramsey testified he and two other officers were driving when they spotted three males standing outside one of the buildings. He said he parked the vehicle in an area out of the sight of defendant and proceeded to the location where he had just seen defendant standing. Ramsey stated the building was obstructing defendant's view of him and his fellow officers, so he was able to walk right up to defendant. He said he walked around the corner of the building and was face to face with defendant. At this point, Ramsey stated he saw defendant discard an object from his right hand into a trash can "and that's when [defendant] just turned about-face to walk away, and for our safety we asked him to stop, and detained him for our protection * * *." Ramsey said that defendant was only asked to stop after he threw the object into the trash can. Ramsey said he looked into the trash can and discovered a plastic baggie with eighty-five (85) rocks of suspected cocaine. He concluded by saying the entire episode from when he first came around the corner lasted about twenty to thirty seconds.
On cross-examination, Ramsey stated it is not illegal for persons to visit residents of CMHA and he did not know before encountering defendant and his friends that they were not residents of CMHA or guests. Ramsey also said he did not see any exchanges between these three men and did not see them talking with others. Ramsey was asked after initially seeing defendant whether defendant was free to walk away. Ramsey responded, "[w]e didn't advise them to stop." Ramsey continued that he approached defendant and the other two individuals with the intent to conduct an oral interview only.
The second witness to testify was CMHA Patrolman Adams. Adams stated in roll call each day the officers are given designated areas to watch for drinking, gambling, drug activity, and other illegal activities. He said the area where defendant was first seen was one of these designated areas. Adams corroborated the testimony of Ramsey about first seeing defendant, parking the car, and approaching the area where defendant was standing. As he rounded the corner, Adams said he "observed [defendant] discard something from his hand into a trash receptacle, then the three males then turned around and started walking * * *." Adams testified they told the three males to come back, but not until after defendant threw the object into the trash can. He also said neither defendant nor the two others were physically detained before defendant discarded the crack. Adams concluded by saying there are signs indicating loitering is not allowed throughout CMHA property and it was later discovered that neither defendant nor the other males were residents of CMHA.
On cross-examination, Adams stated he saw no drinking, gambling, or exchanges between the individuals. And he said the reason he approached the three males was for "interview purposes."
Based on the above testimony the trial court denied defendant's motion to suppress, finding a reasonable suspicion of criminal activity when defendant stands on the street corner where illicit drug deals take place and throws something white after he spots a group of police officers. Following a jury trial, defendant was found guilty of possessing 5.98 grams of crack cocaine. Defendant timely filed his notice of appeal and submitted a single assignment of error for this court to consider.
Defendant's sole assignment of error states as follows:
 THE TRIAL COURT ERRED IN NOT GRANTING THE APPELLANT'S MOTION TO SUPPRESS.
Defendant argues the police instigated an investigatory stop and did not support this detention with reasonable, articulable suspicion of imminent criminal activity. Defendant cites to Statev. Fincher (1991). 76 Ohio App.3d 721, and claims the unobserved approach of the police toward him as they rounded the corner was a show of police authority, and thus his stop was investigatory rather than consensual. And since the stop was investigatory, it was illegal because there was no reasonable suspicion of imminent criminal activity. Defendant supports this argument with the fact that the police did not observe him long enough to gather information of criminal activity such as loitering, trespassing, or other drug related activities in order to support the stop. He maintains he was just standing there and the police had absolutely no basis to approach him and instigate an investigatory stop. Lastly, defendant argues the mere fact that he was associating with or conversing with known drug users or in a high crime area does not suspend the protection of the Fourth Amendment against unreasonable search and seizures and allow the police to commence an investigatory stop. Thus, the motion to suppress was improperly denied.
The state counter-argues that the officers' intent upon approaching defendant was not to show their authority but rather to engage in a consensual encounter to determine if defendant was a resident of CMHA. The state maintains defendant was not exhibiting any characteristics of criminal activity prior to throwing the crack into the trash can. The state contends the officers did not even speak or approach defendant prior to his throwing the crack, so it is impossible to have a show of authority. However, once defendant threw the object into the trash can there was reasonable suspicion of criminal activity sufficient to detain defendant.
The Fourth Amendment to the United States Constitution and Section 14, Article I of the Ohio Constitution guarantee "the right of people to be secure in their persons, houses, papers and effects against unreasonable searches and seizures." State v. Taylor
(1995), 106 Ohio App.3d 741, 747. It is well-established that these guarantees are not implicated in every situation where the police have contact with an individual. California v. Hodari D.
(1991), 499 U.S. 621.
The United States Supreme Court has created three categories of police-citizen contact to identify the situations where these guarantees are implicated. Florida v. Royer (1982), 460 U.S. 491,501-507. The first type is a consensual encounter. Encounters are consensual where the police merely approach a person in a public place, engage the person in conversation and request information, and the person is free to answer or walk away. United States v.Mendenhall (1980), 446 U.S. 544, 553. The request to examine a person's identification does not make an encounter nonconsensual.Florida v. Rodriguez (1984), 469 U.S. 1, 4-6. Nor does the request to search a person's belongings. Florida v. Bostick (1991),501 U.S. 429. The Fourth Amendment guarantees are not implicated in such an encounter unless the police officers have by either physical force or show of authority restrained the person's liberty so that a reasonable person would not feel free to decline the officer's requests or otherwise terminate the encounter.Mendenhall, supra, 466. Moreover, law enforcement officers do not violate the Fourth Amendment by merely approaching an individual on the street or in another public place, by asking him if he is willing to answer some questions, by putting questions to him if the person is willing to listen, or by offering in evidence in a criminal prosecution his voluntary answers to such criminal prosecutions. Royer, supra, at 498. Once a person's liberty has been restrained, the encounter loses its consensual nature and falls into one of the two other Supreme Court categories.
The second type of encounter is that described in Terry v. Ohio (1968), 392 U.S. 1, 16-19. This is the investigatory stop which is more intrusive than the consensual encounter, but less intrusive than a formal custodial arrest. The investigatory detention is limited in duration and purpose and can only last as long as it takes a police officer to confirm or to dispel suspicions. Id. A person is seized during an investigatory detention when, in consideration of all the circumstances surrounding the encounter, by means of physical force or show of authority a reasonable person would have believed that he was not free to leave or was compelled to respond to questions. Mendenhall, supra. Factors to consider when reviewing a seizure include: a threatening presence of several officers, the display of a weapon by an officer, some physical touching of the person, the use of language or tone of voice indicating that compliance with the officer's request might be compelled, approaching the citizen in a nonpublic place, or blocking the citizen's path. Id. at 554.
The third type of encounter involves a seizure that is equivalent to an arrest. To initiate such a seizure the police officer must have probable cause. Terry, supra. A seizure is equivalent to an arrest when (1) there is an intent to arrest; (2) the seizure is made under real or pretended authority; (3) it is accompanied by an actual or constructive seizure or detention; and (4) it is so understood by the person arrested. State v. Barker
(1978), 53 Ohio St.2d 135.
Reviewing the facts of the present case indicates the encounter between defendant and the three police officers did not rise to the level of an arrest, but rather it fits into one of the first two categories: consensual or investigatory.
Defendant's position is that the three police officers initiated an investigatory stop without a reasonable, articulable suspicion of imminent criminal activity. The state's position is that the encounter was consensual and not investigatory. Thus, defendant was not seized and his subsequent throwing of crack into the trash can was not the result of an illegal seizure in violation of the Fourth Amendment.
We believe defendant's encounter was consensual in nature based on our review of several cases which have dealt with this issue. In Taylor, supra, a narcotics detective approached Taylor who had just exited a commercial airplane. The detective was in plain clothes and was alone, and the encounter was in a public place. The detective approached Taylor from the side and did not block his path. The detective asked if he could speak with Taylor and did so in a discreet manner. The detective asked Taylor a few questions and asked to see his airline ticket and driver's license. The encounter lasted a minute or less. The court held the encounter was consensual in nature because there was no display of physical force or authority that would have made Taylor feel as if he was not free to decline the detective's requests or terminate the encounter. The court found no evidence that Taylor was touched, that his path was blocked, or that the officer used a tone of voice indicating compliance was compelled.
In State V. McDaniel (1993), 91 Ohio App.3d 189, an officer was in a hallway where there was suspected drug activity. The officer noticed McDaniel loitering in the hallway and then asked him a few questions including whether McDaniel had any drugs on him. McDaniel responded that he did not and the officer asked if he could search him. McDaniel agreed to the search, which produced a crack pipe with cocaine residue. The court held the encounter was consensual and stated ""a seizure does not occur simply because a police officer approaches an individual and asks a few questions.' So long as a reasonable person would feel free to disregard the police and go about his business, the encounter is consensual and no reasonable suspicion is required." Id. at 191, quoting Hodari D., supra, at 625.
In the present case, Officer Ramsey stated loitering is not permitted on CMHA property. He explained he saw defendant and the two other males standing around in front of the building and approached them to conduct "an oral interview" to determine their reason for standing there. Ramsey said the entire episode from when defendant was first spotted until when defendant was detained for throwing the crack took approximately one minute. Officer Ramsey testified the area where defendant and the other males were standing was a suspicious area for gambling, drinking, and drug activity. He stated as soon as he and the two other officers turned the corner defendant threw the crack into the trash can. The officers did not speak with defendant or the other two males nor did they touch them. In addition, the distance between the two groups was about four feet. Ramsey testified he did not instruct defendant to stop prior to discarding the crack. Ramsey concluded by saying defendant was only asked to stop after he threw the crack into the trash can. Ramsey's entire testimony was corroborated by Officer Adams.
There is no evidence the extremely brief encounter between defendant and the officers, occurring before defendant threw the crack into the trash can, was an investigatory detention. We find the encounter was consensual similar to the findings in Taylor andMcDaniel. There was no show of authority or force other than possibly the three officers coming around the corner unnoticed. However, this was surprise, not force, because only a second or two elapsed before defendant discarded the crack. Defendant's reaction was to discard the crack rather than to immediately flee. In addition, the officers exhibited no physical force, there were no words spoken between defendant and the officers, the encounter took place in a public location, and there is no evidence defendant's path was blocked. In fact, defendant immediately turned around and started walking in the other direction. There is simply no evidence to find that defendant's liberty was restrained by a show of authority or that he was seized. Ramsey stated he merely wanted to question defendant regarding why he was standing at that location. Thus, the Fourth Amendment guarantees are not implicated.
To counter this argument, defendant cites Fincher, supra. In Fincher, two police officers were patrolling in a suspected area of drug activity when they saw Fincher walk toward a car that had stopped traffic on the street. Fincher spotted the police, quickly turned around, and headed toward the side of the street he had just come from. The officers exited their car and one of them pursued Fincher but when the officer came within ten feet of him, Fincher dropped a pill bottle that later turned out to contain crack cocaine. The court found Fincher was "seized" and his freedom of movement was curtailed by physical force or a show of authority as soon as he "walked toward a car that had stopped but walked away when he saw the police." The court then determined this was an investigative stop and held:
 Approaching an occupied car is not illegal and even when it occurs in an area of drug activity it does not justify a seizure even for investigative purposes. Crosby; Hewston, Arrington, supra. Given the officer's assumption that anyone who stands by an occupied car is involved in drug sales or possession it was not unreasonable to walk away from the scene. We hold that approaching an occupied car on foot and then, upon seeing the police, retreating from the scene is not sufficient activity to justify an investigative stop, even in an area of drug activity.
Fincher is inapplicable to the facts of the present case and is easily distinguishable. In Fincher the police were executing aTerry investigatory stop. In the present case, the officers approached defendant only to question him; thus the encounter was not a Terry stop but rather a consensual encounter. Moreover, Fincher was a fleeing suspect while the instant defendant was stationary. This indicates Fincher was cognizant of physical force or a show of authority. In contrast, the instant defendant remained stationary upon being confronted by the police and did not walk away from the scene until after he discarded the crack. Thus, he was not seized by physical force or a show of authority before he discarded the crack. Lastly, and most importantly, Fincher's movements or freedom were supposedly curtailed because he retreated from a car he had approached. This is the fact the Fincher court relied on to find Fincher had been "seized." In the present case, defendant's movements or freedom were not curtailed. He was free to leave the scene prior to discarding the crack as evidenced by Ramsey's testimony that defendant was not instructed to stop. As a result we find Fincher inapplicable.
It should also be noted that subsequent United States Supreme Court cases have reduced the precedential value of Fincher, leading to our conclusion that Fincher should be limited to its facts only. In Hodari D., 499 U.S. 621, the Court held that, even if police officer's pursuit was a show of authority enjoining juvenile to halt, because juvenile did not comply with that injunction, he was not seized until he was tackled so that cocaine abandoned while he was running was not fruit of seizure. In addition, in County ofSacramento v. Lewis (1998), 118 S.Ct. 1708, citing Brower v. Countyof Inyo (1989), 489 U.S. 593, 596-597, the Court stated:
 "* * * a Fourth Amendment seizure does not occur whenever there is a governmentally caused termination of an individual's freedom of movement (the innocent passerby), nor even whenever there is a governmentally caused and governmentally desired termination of an individual's freedom of movement (the fleeing felon), but only when there is a governmental termination of an individual's freedom of movement through means intentionally applied."
In both the present case and Fincher, each defendant's movements were not terminated by the government until after each defendant had discarded drugs. Therefore, based on Hodari D. and County of Sacramento, all police activity prior to each defendant's drug abandonment was not a show of authority or physical force and neither defendant had been seized thus implicating the guarantees of the Fourth Amendment.
As a result of the foregoing, we find there was no encounter between defendant and the police officers. There was merely the officers' intent to speak with defendant as they turned the corner; thus the guarantees of the Fourth Amendment do not apply. Accordingly, the trial court was correct in denying defendant's motion to suppress the evidence that subsequently resulted from his police encounter. Defendant's sole assignment of error is overruled.
Judgment affirmed.
It is ordered that appellee recover from appellant its costs herein taxed.
The court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this court directing the Court of Common Pleas to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
TERRENCE O'DONNELL, P.J. DIANE KARPINSKI, J., CONCUR
 ___________________________________ JOHN T. PATTON JUDGE