[Cite as *State v. Richardson*, 2016-Ohio-5801.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

State of Ohio,                                    :

      Plaintiff-Appellee,                     :                No. 15AP-870
                                                                           (C.P.C. No. 14CR-4526)
v.                                                      :

Amir H. Richardson,                       :                (REGULAR CALENDAR)

      Defendant-Appellant.              :

---

# D E C I S I O N

### Rendered on September 13, 2016

---

**On brief:** *Ron O'Brien*, Prosecuting Attorney, and *Barbara A. Farnbacher*, for appellee.

**On brief:** *Yeura R. Venters*, Public Defender, and *David L. Strait*, for appellant.

---

APPEAL from the Franklin County Court of Common Pleas

BROWN, J.

{¶ 1} This is an appeal by defendant-appellant, Amir H. Richardson, from a judgment of conviction and sentence entered by the Franklin County Court of Common Pleas on appellant's plea of no contest to possession of cocaine following the court's denial of his motion to suppress.

{¶ 2} On August 22, 2014, appellant was indicted on one count of possession of cocaine, in violation of R.C. 2925.11. On March 24, 2015, appellant filed a motion to suppress.

{¶ 3} On June 17, 2015, the trial court conducted a hearing on the motion to suppress. The first witness for the state was Columbus Police Officer Steven Dyer. On

June 13, 2013, Officer Dyer, an officer with ten years experience, was working "the community summer safety initiative," involving patrol assignments near "hot spots or problem areas." (Tr. Vol. I at 4.) One of the areas the officers patrolled included an apartment complex located on Walford Street, Columbus. The complex consists of "several buildings" and, according to Officer Dyer, constitutes a "high-crime area" based on arrests and "complaints from the neighbors." (Tr. Vol. I at 5.)

{¶ 4} At approximately 6:30 p.m., Officer Dyer encountered appellant in the hallway of one of the apartment buildings. Officer Dyer and his partner, Officer Dana Houseberg, were walking through the hallways of the building; the officers had information that individuals "were selling drugs in the hallway." (Tr. Vol. I at 6.) The officers entered the building through the east door; the east door lock "had been damaged and you can go in and out of it." (Tr. Vol. I at 7.) The apartment manager "gave us a key, too, so we can go in and out whenever we chose." (Tr. Vol. I at 7.) Officer Dyer observed "nobody on the second floor." (Tr. Vol. I at 7.) He then looked down the lower floor and "saw two people down there." (Tr. Vol. I at 7.) The officer observed "a female * * * standing in front of a door," while the other individual, appellant, "was holding a pizza box." (Tr. Vol. I at 7-8.)

{¶ 5} The officers walked down to the lower floor and Officer Dyer "greeted the female, she greeted us back, and she went inside the apartment." (Tr. Vol. I at 8.) Officer Dyer observed appellant "standing at the end of the hallway." (Tr. Vol. I at 8.) The officers "walked over towards him. He started walking towards us." (Tr. Vol. I at 8.) Officer Dyer "greeted him," but appellant "did not answer * * * back." (Tr. Vol. I at 8.) Officer Dyer then "asked him if he lived here, he said no." (Tr. Vol. I at 8.) Officer Houseberg "may have asked him a question." (Tr. Vol. I at 8.)

{¶ 6} Appellant walked past the officers. Officer Dyer asked appellant what he was "doing here since he doesn't live here, and he says he's visiting somebody in another building." (Tr. Vol. I at 8.) Officer Dyer testified that appellant was not under arrest at the time. Appellant, who was walking in the opposite direction of the officers, walked past the officers and "exited out the east door." (Tr. Vol. I at 9.) Once outside the apartment building, appellant "sat on the air conditioner [unit] and was eating his pizza." (Tr. Vol. I at 9.)

{¶ 7}   Officer Dyer asked appellant for identification and appellant provided his name and date of birth.  Officer Dyer ran a warrant check over the radio, and the check disclosed that appellant had an outstanding warrant.  At that time, appellant "had moved from the air conditioner, he had walked over to the Dumpster, threw his pizza box away * * * or he was walking in that direction."  (Tr. Vol. I at 10.)  Officer Dyer then informed Officer Houseberg, as well as another officer who arrived in a cruiser, that "he has a warrant, he's a code three, which means he's under arrest."  (Tr. Vol. I at 10.)

{¶ 8}   After appellant was placed under arrest, Officer Dyer "immediately walked into the building" where the officer first observed appellant; in the area where appellant had been standing, Officer Dyer "saw a plastic Baggie containing crack cocaine."  (Tr. Vol. I at 10-11.)   Officer Dyer subsequently advised appellant of his *Miranda* rights, and appellant signed a waiver of rights form.  The officers then spoke with appellant, and "[h]e said that the crack was his."  (Tr. Vol. I at 12.)  Officer Dyer testified that the officers did not place appellant in custody until it was determined he had an outstanding warrant.

{¶ 9}   On cross-examination, Officer Dyer stated appellant verbally provided the officer his name and date of birth.  On re-direct examination, Officer Dyer stated that the police cruiser parked near the air conditioning unit was not blocking appellant's ability to walk away, nor did the officers impede appellant's actions as he walked to the dumpster to throw away the pizza box.

{¶ 10} Officer Houseberg, who has been with the department approximately ten years, testified that Walford Street is a "high-crime area" with "a lot of narcotics activity, vice complaints, prostitution."  (Tr. Vol. I at 28.)  On June 13, 2013, Officers Houseberg and Dyer encountered appellant on the bottom floor of the apartment building.  Officer Dyer "said * * * hi to him."  (Tr. Vol. I at 29.)  Appellant "didn't really say anything back."  (Tr. Vol. I at 30.)  Officer Dyer then "asked him if he lived in the building, [and] he said no."  (Tr. Vol. I at 30.)  Officer Houseberg asked appellant "if he was visiting somebody," but "[h]e didn't respond."  (Tr. Vol. I at 30.)

{¶ 11} Appellant then "started to walk towards the east door to walk out of the building."  (Tr. Vol. I at 30.)  The two officers then followed him, and Officer Dyer "asked him again * * * what was he doing here, and that's when he said he was visiting someone else in another building."  (Tr. Vol. I at 30.)  Officer Houseberg testified that appellant was

free to leave at this time, noting that "he walked past us." (Tr. Vol. I at 30.) The officers did not tell him to stop; rather, they "simply just walked behind him." (Tr. Vol. I at 30.) During the encounter, appellant answered some of their questions and declined to answer some of their questions.

{¶ 12} Appellant went outside and "was sitting on the air conditioning unit outside the building." (Tr. Vol. I at 31.) The officers also went outside, and Officer Dyer asked appellant his name and date of birth. The officers then ran a warrant check. Appellant "sat there and ate his pizza, and then he ended up walking toward the * * * garbage can, and threw his * * * pizza box away." (Tr. Vol. I at 43.)

{¶ 13} After receiving information that appellant had an outstanding warrant, the officers detained him and placed him in the back of a cruiser. Officer Houseberg testified that appellant was not placed in custody until the warrant check was completed. Upon receiving the warrant information, Officer Dyer went back inside the building and found "suspected crack cocaine in a Baggie next to where we had seen him last." (Tr. Vol. I at 32.) The officers advised appellant of his *Miranda* rights, and appellant signed a waiver of rights form. The officers then questioned appellant about the crack cocaine.

{¶ 14} At the conclusion of the suppression hearing, the trial court announced it was denying appellant's motion to suppress. On August 17, 2015, appellant appeared before the trial court and entered a plea of no contest to the charge of possession of cocaine. By judgment entry filed August 18, 2015, the court sentenced appellant to one-year of community control.

{¶ 15} On appeal, appellant sets forth the following assignment of error for this court's review:

> The trial court erred in overruling a defense motion to suppress evidence seized in the unconstitutional search of Appellant.

{¶ 16} Under his single assignment of error, appellant contends the trial court erred in denying his motion to suppress. Appellant argues that the search in this case did not fit within any of the recognized exceptions to the warrant requirement. According to appellant, a reasonable person in his position would not believe he was free to leave and, therefore, the trial court erred in finding the encounter to be consensual. In addition to

his contention that the encounter was not consensual, appellant further argues the state failed to present facts to support reasonable suspicion for a "*Terry* stop."

{¶ 17} The Supreme Court of Ohio has held that "[a]ppellate review of a motion to suppress presents a mixed question of law and fact. When considering a motion to suppress, the trial court assumes the role of trier of fact and is therefore in the best position to resolve factual questions and evaluate the credibility of witnesses." *State v. Burnside,* 100 Ohio St.3d 152, 2003-Ohio-5372, ¶ 8, citing *State v. Mills,* 62 Ohio St.3d 357, 366 (1992). Thus, "an appellate court must accept the trial court's findings of fact if they are supported by competent, credible evidence." *Id.*, citing *State v. Fanning,* 1 Ohio St.3d 19 (1982). Further, "[a]ccepting these facts as true, the appellate court must then independently determine, without deference to the conclusion of the trial court, whether the facts satisfy the applicable legal standard." *Id.*, citing *State v. McNamara,* 124 Ohio App.3d 706, 707 (4th Dist.1997).

{¶ 18} In general, "[t]he Fourth Amendment of the United States Constitution, applied to the states through the Fourteenth Amendment, protects persons against unreasonable searches and seizures." *State v. Jones,* 9th Dist. No. 12CA010270, 2013-Ohio-2375, ¶ 8. In order for a search or seizure to be reasonable "it must be based upon probable cause and executed pursuant to a warrant, unless an exception to the warrant requirement is applicable." *State v. Battle,* 10th Dist. No. 10AP-1132, 2011-Ohio-6661, ¶ 26. Common exceptions to the warrant requirement include consensual encounters between citizens and police officers and investigatory or *Terry* stops. *State v. Massingill,* 8th Dist. No. 92813, 2009-Ohio-6221, ¶ 13.

{¶ 19} In this respect, the United States Supreme Court recognizes three categories of police-citizen interactions: (1) "a consensual encounter, which requires no objective justification"; (2) "a brief investigatory stop or detention, which must be supported by reasonable suspicion of criminal activity"; and (3) "a full-scale arrest, which must be supported by probable cause." *State v. Young,* 10th Dist. No. 14AP-721, 2015-Ohio-2006, ¶ 16.

{¶ 20} Not every encounter between a citizen and a law enforcement officer implicates the state and federal prohibition against unreasonable searches and seizures. *State v. Lenard,* 8th Dist. No. 96975, 2012-Ohio-1636, ¶ 37. A police officer "may lawfully

initiate a consensual encounter without probable cause or a reasonable, articulable suspicion of criminal activity." *Id.* at ¶ 38. Encounters between police officers and the public are "consensual when the police approach an individual in a public place, engage the person in conversation, and request information, as long as the person is free to walk away." *Id.* By contrast, "[a] 'seizure' giving rise to Fourth Amendment concerns occurs only when, in view of all the circumstances surrounding the incident, the police officer, either by physical force or by show of authority, restrains the person's liberty so that a reasonable person would not feel free to decline the officer's request and walk away." *Id.* The issue of whether a reasonable person would feel free to leave "is dependent on the totality of the circumstances of the case." *State v. Saunders,* 2d Dist. No. 22621, 2009-Ohio-1273, ¶ 16. Factors that may indicate an encounter is not consensual include: "the threatening presence of several officers, the officer's wearing of a uniform, the display of a weapon, the touching of the person, the use of language or a tone of voice conveying that compliance is compelled, and approaching the person in a non-public place." *Id.*

{¶ 21} In the present case, Officer Dyer observed appellant in the hallway of an apartment building and greeted him. Appellant did not initially respond to the officer, but then responded "no" to the officer's inquiry whether he lived in the building. At that point, appellant was free to ignore the officer's inquiries and walk away; appellant in fact walked past the officers and exited the building holding a pizza box. Appellant sat down on an outdoor air conditioning unit and began to eat his food. Officer Dyer asked appellant for identification and appellant verbally provided the officer with his name and date of birth. During a consensual encounter, "an officer is permitted to request information, such as identifying information, from the person the officer is talking to." *State v. Starcher,* 7th Dist. No. 13 JE 1, 2013-Ohio-5533, ¶ 23. After appellant verbally provided the officer his name and date of birth, the officers ran a warrant check; shortly thereafter, appellant moved from the air conditioning unit to a nearby dumpster to throw away the pizza box. The warrant check disclosed that appellant had an outstanding warrant, and the officers then placed him under arrest.

{¶ 22} Ohio courts have deemed an encounter between a police officer and a civilian to be consensual where such encounter occurs in a public place, the officer asks a few questions and requests some information, and the record is devoid of evidence

indicating a display of force or authority that would make a reasonable person believe he or she was not free to decline the officer's requests or otherwise terminate the encounter. *State v. Taylor,* 106 Ohio App.3d 741, 752 (2d Dist.1995). *See also State v. McDaniel,* 91 Ohio App.3d 189, 192 (8th Dist.1993), quoting *Florida v. Bostick*, 501 U.S. 429, 436 (1991) (conduct of police officers assigned to investigate drug activity inside apartment building in approaching defendant, who was loitering in hallway, and asking if he had drugs or weapons did not constitute a seizure as defendant "was 'free to decline the officers' requests or otherwise terminate the encounter' ").

{¶ 23} Here, the evidence does not indicate that the officers commanded appellant to stop or that they blocked his path during the encounter. Based on the testimony presented, appellant chose to answer certain questions posed by the officers and declined to answer others. As noted under the facts, when first approached by the officers, appellant walked past them and exited the hallway of the building; once outside, he sat on an outdoor air conditioning unit and ate his food. The record does not suggest that the officers displayed weapons, physically touched appellant or used language or a tone of voice conveying that compliance was compelled. *Saunders* at ¶ 16. Further, the record indicates the officers did not place appellant in custody until after receiving information concerning the outstanding warrant.

{¶ 24} In considering the totality of the circumstances, we find unpersuasive appellant's contention that a seizure occurred for purposes of the Fourth Amendment. Accordingly, the trial court did not err in finding the encounter consensual and denying the motion to suppress.

{¶ 25} Based on the foregoing, appellant's single assignment of error is overruled and the judgment of the Franklin County Court of Common Pleas is hereby affirmed.

*Judgment affirmed.*

TYACK and HORTON, JJ., concur.

_____