[Cite as *State v. Brown*, 2019-Ohio-3160.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

State of Ohio,                                          :

      Plaintiff-Appellee,                        :

                                               No. 18AP-754

v.                                                          :      (C.P.C. No. 17CR-2909)

William T. Brown,                                    :      (REGULAR CALENDAR)

      Defendant-Appellant.                     :

---

D E C I S I O N

Rendered on August 6, 2019

---

**On brief:** *Ron O'Brien*, Prosecuting Attorney, and *Valerie B. Swanson* for appellee. **Argued:** *Valerie B. Swanson.*

**On brief:** *Yeura R. Venters*, Public Defender, and *Ian J. Jones* for appellee. **Argued:** *Ian J. Jones.*

APPEAL from the Franklin County Court of Common Pleas

KLATT, P.J.

{¶ 1} Defendant-appellant, William T. Brown, appeals from a judgment of conviction and sentence entered by the Franklin County Court of Common Pleas pursuant to his no contest plea to possession of heroin following the trial court's denial of his motions to suppress. Because the trial court did not err in denying appellant's motions to suppress, we affirm.

{¶ 2} On May 26, 2017, a Franklin County Grand Jury indicted appellant on one count of possession of heroin, in violation of R.C. 2925.11, a felony of the fifth degree. Appellant initially entered a plea of not guilty.

{¶ 3} On April 17, 2018, appellant filed motions to suppress evidence and statements. The trial court conducted an evidentiary hearing on the motions on August 29, 2018.

{¶ 4}  Columbus Police Officer Kyle Beatty was the only witness who testified at the suppression hearing.  Beatty averred that on June 2, 2016, he and his fellow officer, Erik Bateman, were on patrol in a marked police cruiser in the area of Fifth and Benfield at approximately 4:48 p.m.  The officers were in the area based upon complaints of narcotics being sold out of a "suspected drug house" on Fifth.  (Aug. 29, 2018 Tr. at 13.)  To that end, he and Bateman were "looking for a consistency of narcotics sales, people in and out quick, people hanging around, prostitutes in the area, things like that."  *Id.* at 12.

{¶ 5}  The officers stopped in front of the house and observed appellant and another man standing outside near the driveway.  When the men saw the officers, both immediately turned their backs and started looking up at a tree.  When the officers pulled their cruiser next to the men, neither of them turned around or acknowledged the officers in any way.  Because the men were standing in front of a suspected drug house and "their actions happened the second we pulled down the street," the officers believed the men "were engaged in drug activity from that house."  *Id.* at 15.  The officers exited their cruiser simultaneously; neither drew a weapon.

{¶ 6}  The officers approached the men and engaged them in conversation.  Specifically, the officers asked if either of them lived in the house; both men denied living there.  Appellant then "started walking away very slowly with his back towards us."  *Id.* at 17.  Appellant did not say anything to the officers as he walked away.  Because he was walking so slowly, Beatty thought appellant was "contemplating running."  *Id.* at 17.  Beatty stayed with appellant's companion while Bateman followed appellant down the street for approximately 10 to 12 feet.  According to Beatty, Bateman did not tell appellant to stop walking, did not impede his travel, did not display his firearm, did not act aggressively toward appellant, and did not otherwise do anything to make appellant think he was not free to leave the area.

{¶ 7}  As Bateman was following appellant, he noticed that appellant "had his hand clenched" and that there was a piece of plastic protruding from his hand.  *Id.* at 18, 21.  Because he was aware that narcotics are often transported in plastic bags, Bateman asked appellant what was in his hand.  Appellant opened his hand slightly and Bateman saw more of the plastic bag.  Bateman asked appellant, "Well, what is it?"  *Id.* at 21.  Appellant opened his hand and Bateman observed what he suspected was heroin inside the bag.  Bateman

confiscated the bag and gave it to Beatty, who also suspected that the bag contained heroin. Bateman then placed appellant under arrest.

{¶ 8} Beatty acknowledged that his testimony about Bateman's observations regarding the plastic bag in appellant's hand and his questioning of appellant as to the contents of the bag was based upon his review of the U-10 police report which was generated collaboratively by both officers following the incident. Beatty testified that at the time of the incident at issue, he had worked with Bateman for seven years and had no reason to believe that Bateman was untruthful in preparing the U-10. The U-10 was admitted into evidence over appellant's objection.

{¶ 9} On cross-examination, Beatty acknowledged that when he initially approached appellant and the other man, he did not see them exchange anything between them, did not see either of them holding what could be considered a weapon, did not hear their conversation and did not see them commit a crime. Beatty further acknowledged that he did not hear the conversation between Bateman and appellant.

{¶ 10} At the conclusion of the suppression hearing, the trial court denied the motions to suppress. In particular, the court concluded that the encounter between the officers and appellant was consensual until the point where appellant opened his hand and the officers observed what they believed to be heroin in plain view, at which time there was probable cause to detain and arrest appellant.

{¶ 11} Immediately following the trial court's decision on the motions to suppress, appellant withdrew his not guilty plea and entered a plea of no contest to the charge of heroin possession. By judgment entry filed August 30, 2018, the court sentenced appellant to three years of community control.

{¶ 12} On appeal, appellant sets forth the following assignment of error for this court's review:

> THE TRIAL COURT ERRED IN DENYING APPELLANT'S MOTION TO SUPPRESS EVIDENCE, AS POLICE ILLEGALLY DETAINED APPELLANT BEFORE REASONABLE SUSPICION OF CRIMINAL ACTIVITY EXISTED AND THE STATE DID NOT MEET ITS BURDEN BY A PREPONDERANCE OF THE EVIDENCE THAT AN ILLEGAL SEIZURE HAD NOT OCCURRED.

{¶ 13} Under his single assignment of error, appellant contends that the trial court erred in denying his motions to suppress. Appellant argues that a reasonable person in his position would not believe he was free to leave and, therefore, the trial court erred in finding the encounter with the police to be consensual. In addition to his contention that the encounter was not consensual, appellant further argues that the state failed to present facts to support reasonable suspicion justifying an investigatory stop pursuant to *Terry v. Ohio*, 392 U.S. 1 (1968).

{¶ 14} Appellate review of a trial court's disposition of a motion to suppress presents a mixed question of law and fact. *State v. Burnside,* 100 Ohio St.3d 152, 2003-Ohio-5372, ¶ 8. When considering a motion to suppress, the trial court assumes the role of trier of fact and is thus in the best position to resolve factual questions and evaluate the credibility of witnesses. *Id.*, citing *State v. Mills,* 62 Ohio St.3d 357, 366 (1992). Thus, an appellate court must accept the trial court's findings of fact if they are supported by competent, credible evidence. *Id.,* citing *State v. Fanning,* 1 Ohio St.3d 19 (1982). Further, "[a]ccepting these facts as true, the appellate court must then independently determine, without deference to the conclusion of the trial court, whether the facts satisfy the applicable legal standard." *Burnside* at ¶ 8, citing *State v. McNamara,* 124 Ohio App.3d 706, 707 (4th Dist.1997).

{¶ 15} "In general, '[t]he Fourth Amendment to the United States Constitution, applied to the states through the Fourteenth Amendment, protects persons against unreasonable searches and seizures.' " *State v. Richardson,* 10th Dist. No. 15AP-870, 2016-Ohio-5801, ¶ 18, quoting *State v. Jones,* 9th Dist. No. 12CA010270, 2013-Ohio-2375, ¶ 8. For a search or seizure to be reasonable, it must be based upon probable cause and executed pursuant to a warrant, unless an exception to the warrant requirement applies. *State v. Battle,* 10th Dist. No. 10AP-1132, 2011-Ohio-6661, ¶ 26. Common exceptions to the warrant requirement include consensual encounters between the police and the public and investigatory or *Terry* stops. *Richardson* at ¶ 18, citing *State v. Massingill,* 8th Dist. No. 92813, 2009-Ohio-6221, ¶ 13.

{¶ 16} In this regard, the United States Supreme Court recognizes three categories of police-citizen interactions: (1) "a consensual encounter, which requires no objective justification"; (2) "a brief investigatory stop or detention, which must be supported by reasonable suspicion of criminal activity"; and (3) "a full-scale arrest, which must be

supported by probable cause." *State v. Young,* 10th Dist. No. 14AP-721, 2015-Ohio-2006, ¶ 16.

{¶ 17} The Fourth Amendment is not implicated in all personal encounters between police officers and citizens. *Richardson* at ¶ 20, citing *State v. Lenard,* 8th Dist. No. 96975, 2012-Ohio-1636, ¶ 37. A police officer "may lawfully initiate a consensual encounter without probable cause or a reasonable, articulable suspicion of criminal activity." *Id.,* citing *Lenard* at ¶ 38. A consensual encounter occurs when the police approach an individual in a public place, engage the individual in conversation and the individual remains free to walk away. *Young* at ¶ 16. A consensual encounter remains as such even when the police ask questions, ask to see identification, or ask to search the individual's belongings, as long as the police do not convey a message that compliance with their requests is required. *Id.*

{¶ 18} In contrast, a "seizure" which implicates the Fourth Amendment occurs only when, in view of all the circumstances surrounding the incident, the police, either by physical force or by show of authority, restrain the person's liberty so that a reasonable person would not feel free to decline the police requests and walk away. *Richardson* at ¶ 20. Whether a reasonable person would feel free to leave depends upon the totality of circumstances in the case. *Id.,* citing *State v. Saunders,* 2d Dist. No. 22621, 2009-Ohio-1273, ¶ 16. Factors indicating that an encounter is not consensual and the person has been seized include: " 'the threatening presence of several officers, the officer's wearing of a uniform, the display of a weapon, the touching of the person, the use of language or a tone of voice conveying that compliance is compelled, and approaching the person in a non-public place.' " *Id.,* quoting *Saunders* at ¶ 16.

{¶ 19} The present appeal involves the distinction between a consensual encounter and an investigatory stop. As this court noted in *Richardson,* Ohio courts have found police/citizen encounters to be consensual where the "encounter occurs in a public place, the officer asks a few questions and requests some information, and the record is devoid of evidence indicating a display of force or authority that would make a reasonable person believe he or she was not free to decline the officer's requests or otherwise terminate the encounter." *Id.* at ¶ 22, citing *State v. Taylor,* 106 Ohio App.3d 741, 752 (2d Dist.1995); *State v. McDaniel,* 91 Ohio App.3d 189, 192 (8th Dist.1993).

{¶ 20} Indeed, this case factually is very similar to *State v. Simmons,* 12th Dist. No. CA2012-11-229, 2013-Ohio-5088, and *State v. Kidd,* 2d Dist. No. 17899 (Apr. 7, 2000). In *Simmons,* while on patrol in an area known for illegal drug activity, the police observed Simmons sitting on the stairs outside an apartment building, looking down at something in his left hand. When Simmons noticed the patrol car, he acted nervous, clenched his hands, and brought his left hand down to his left side. He then stood up and began walking toward the patrol car with his left fist clenched by his side. The police exited the patrol car, approached Simmons, and asked him what he had in his hand. Simmons responded that he had nothing in his hand and started to walk away with his left hand remaining clenched. The police then observed a clear plastic baggie protruding from the back of Simmons' closed hand. Noting that plastic baggies are a typical means of transporting drugs, the police again asked Simmons if he had anything in his hand. Simmons again responded in the negative while continuing to walk away. The police then grabbed Simmons' left hand. Simmons pulled away and put the plastic baggie in his jacket pocket. Following a scuffle with Simmons, the police retrieved the baggie, which contained what appeared to be crack cocaine, and placed him under arrest. Simmons was subsequently indicted for possession of cocaine and resisting arrest.

{¶ 21} Simmons filed a motion to suppress, which the trial court denied on grounds that the police interaction with Simmons was consensual until the point where they grabbed his left hand. The appellate court agreed, specifically finding that "the initial encounter between [Simmons] and [the police] was consensual." *Id.* at ¶ 15. The court noted that during their initial interaction with Simmons, the police did not use any force, did not exercise their authority as police officers, did not indicate that Simmons could not leave, and did nothing to impede Simmons' travel. The court further noted that until the point the police grabbed Simmons' left hand after spotting the baggie clenched in his fist, the police "did no more than approach [Simmons] in a public area and ask two reasonable questions: 'what's in your hand' and 'do you have anything in your hand.' " *Id.* The court reasoned that the police did not need reasonable suspicion merely to approach Simmons in order to make reasonable inquiries of him. *Id.* The court found that once the police grabbed Simmons' hand, the encounter evolved into a *Terry* stop.

{¶ 22} In *Kidd,* a police officer, while in a marked police cruiser, observed Kidd walking down the street in the opposite direction. Kidd was swinging his left arm in a normal walking fashion, but kept his right arm rigid and his right fist clenched. Without turning on the overhead cruiser light or sounding his siren or horn, the officer drove up to Kidd and asked him through the passenger side window what he had in his hand. Kidd opened his clenched fist and dropped several pieces of what was later identified as crack cocaine. Kidd was arrested and indicted; he thereafter filed a motion to suppress. The appellate court concurred in the trial court's conclusion that Fourth Amendment guarantees were not implicated by the encounter because there was neither an exertion of physical force nor show of authority by the police such that Kidd would not have felt free to decline to respond to questions or otherwise terminate the encounter.

{¶ 23} In the present case, Officers Beatty and Bateman observed appellant and his companion outside a suspected drug house, exited their police cruiser, and engaged the two men in conversation. Although both officers were dressed in official police uniforms, were in a marked police cruiser, and were presumably armed, there is no evidence that they activated their cruiser lights or sirens, displayed their weapons or blocked appellant's travel. At that point, appellant was free to walk away from the encounter; indeed, he did so. Although Bateman followed appellant for 10 to 12 feet and asked him what was in the plastic bag appellant had clenched in his hand, there is no evidence that he commanded appellant to stop, ordered him to open his hand, or blocked his path during the encounter. The testimony presented by Beatty both from his own observations and his review of the information provided by Bateman in the U-10 report established that appellant chose to show Bateman what was in his hand. The record does not suggest that Bateman displayed his weapon, physically touched appellant, or used language or a tone of voice conveying that compliance with his request for information about what was in his hand was compelled. Thus, the interaction was a consensual encounter until the point where appellant was seized after opening his hand and showing Bateman he was in possession of illegal drugs. If, in the course of a consensual encounter, the police observe contraband in "plain view," the police develop probable cause with respect to that item and may act accordingly. *State v. Adams,* 10th Dist. No. 18AP-330, 2019-Ohio-1323, ¶ 13.

{¶ 24} Based upon the totality of the circumstances in this case, we conclude that a reasonable person would not have believed that he or she was not free to leave or otherwise terminate the encounter with the police.  Accordingly, the trial court did not err in finding the encounter consensual and denying the motions to suppress.  Having determined that the trial court did not err when it found that appellant's encounter with the police was consensual and the appellant freely and voluntarily showed the police the contraband, we need not address the parties' alternative arguments based on the investigatory stop exception under *Terry. See State v. Hannah,* 10th Dist. No. 15AP-212, 2015-Ohio-4964, ¶ 24.

{¶ 25} Based on the foregoing, appellant's single assignment of error is overruled, and the judgment of the Franklin County Court of Common Pleas is affirmed.

*Judgment affirmed.*

SADLER and DORRIAN, JJ., concur.

_____